O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **STEVEN A. MCMAHON,** | ) | NO. SACV 10-00475-MAN |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| | ) | AND ORDER |
| **MICHAEL J. ASTRUE,** | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff filed a Complaint on April 16, 2010, seeking review of the denial by the Social Security Commissioner (the "Commissioner") of plaintiff's application for a period of disability and disability insurance benefits ("DIB"). On October 16, 2010, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. The parties filed a Joint Stipulation on December 17, 2010, in which: plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and defendant requests that the Commissioner's decision be affirmed or, alternatively, remanded for further administrative proceedings. The

Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed an application for a period of disability and DIB. (Administrative Record ("A.R.") 136-38.) Plaintiff claims to have been disabled since January 1, 2003, due to blood clots, deep vein thrombosis of the right leg, peripheral neuropathy, spinal stenosis, five desiccated discs and bone spurs of the lower back, colitis, panic attacks, generalized anxiety, post-traumatic syndrome, and depression. (A.R. 75, 147.) Plaintiff has past relevant work experience as a tax preparer, operation analyst, and administrative assistant and/or clerk.[1] (A.R. 18.)

After the Commissioner denied plaintiff's claim initially and upon reconsideration (A.R. 12, 75-78), plaintiff requested a hearing (A.R. 82). On October 29, 2007, and September 22, 2008, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Keith Dietterle (the "ALJ"). (A.R. 23-40, 54-73.) Vocational expert David A. Rinehart and medical expert Alanson A.

---

[1] Although not discussed in the ALJ's decision, it appears that plaintiff also has past relevant work experience as a home attendant. (*See, e.g.*, A.R. 37.)

Mason, M.D.[2] also testified at the September 22, 2008 hearing.[3]  (A.R. 23-40.)  On January 21, 2009, the ALJ denied plaintiff's claim (A.R. 12-19), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-3).  That decision is now at issue in this action

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff has not engaged in substantial gainful activity since January 1, 2003, the alleged onset date of plaintiff's claimed disability.  (A.R. 14.)  The ALJ further found that plaintiff last met the insured status requirements of the Social Security Act on December 31, 2005.  (*Id.*)  The ALJ determined that plaintiff has the severe impairment of back pain.[4]  (*Id.*)  The ALJ also determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals in severity any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525 and 404.1526).  (A.R. 16.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform the full range of

---

[2] Dr. Mason has a medical specialty in orthopedic surgery.  (A.R. 17, 379.)

[3] In his decision, the ALJ stated that vocational expert Kelly Winn-Boaitey testified.  (A.R. 12.)  After carefully reviewing the transcripts from both hearings, however, the Court cannot find any evidence of such testimony.

[4] The ALJ also determined that plaintiff's impairment of affective disorder is "non-severe."  (A.R. 14.)

light work as defined in 20 CFR 404.1567(b). (*Id.*) Specifically, the ALJ found that:

> [Plaintiff] can occasionally lift and carry twenty pounds and frequently lift and carry ten pounds. [Plaintiff] can stand for a total of four hours in an eight-hour workday, walk for a total of two hours in an eight-hour workday, and sit for a total of six hours in an eight-hour workday. [Plaintiff] can occasionally climb stairs and ramps, balance, stoop, kneel, and crouch. [Plaintiff] cannot reach overhead, bilaterally. [Plaintiff] cannot perform operations of foot controls on the right side. [Plaintiff] is precluded from crawling and climbing ladders or scaffolds. [Plaintiff] is also precluded from working at unprotected heights and vibrations.

(*Id.*)

The ALJ concluded that plaintiff's past relevant work as a tax preparer, operation analyst, and administrative assistant and/or clerk does not require the performance of work-related activities precluded by plaintiff's RFC. (A.R. 18.) Accordingly, the ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act from January 1, 2003, the alleged onset date, through December 31, 2005, the date last insured. (A.R. 19.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's

4

decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which

exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff makes the following claims: (1) the ALJ failed to find plaintiff's vascular insufficiency of the right leg to be a "severe" impairment at step two; and (2) the ALJ did not properly assess plaintiff's credibility. (Joint Stipulation ("Joint Stip.") at 2.)

**I. The ALJ's Failure To Consider Plaintiff's Vascular Insufficiency Of The Right Leg For Purposes Of Step Two Constitutes Error.**

At step two of the sequential evaluation process, the ALJ is tasked with identifying a claimant's "severe" impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."[5] 20 C.F.R. § 404.1520(c). Despite use of the term "severe," most circuits, including the Ninth Circuit, have held

---

[5] Basic work activities are "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). Examples of such activities include: (1) "physical functions such as walking, sitting, lifting, pushing, pulling, reaching, carrying or handling"; (2) the capacity for "seeing, hearing, and speaking"; (3) "understanding, carrying out, and remembering simple instructions"; (4) the use of judgment; (5) "responding appropriately to supervision, co-workers and ususal work situations"; and (6) "dealing with changes in routine work schedules." *Id.*

6

that the step two inquiry is "a de minimus screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Accordingly, "[a]n impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on [a claimant's] ability to work.'" Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005)(citation omitted); *see* Soc. Sec. Ruling 85-28, 1985 WL 56856, at *3, 1985 SSR LEXIS 19, at *9 (stating that "[a] claim may be denied at step two only if . . . a finding [that the relevant impairments are not medically severe] is *clearly established by medical evidence*")(emphasis added).

At step two of the sequential evaluation process, the ALJ determined that plaintiff's back pain is a "severe" impairment and his affective disorder is a "non-severe" mental impairment. (A.R. 14.) The ALJ made no determination, however, regarding whether plaintiff's vascular insufficiency of the right leg constitutes a severe impairment. Plaintiff contends that the ALJ's failure to find plaintiff's vascular insufficiency of the right leg to be a severe impairment constitutes error. (Joint. Stip. at 2-3.)

At the October 2007 administrative hearing, plaintiff testified that he has had deep vein thrombosis of the right leg since December 2004. (A.R. 65.) Plaintiff also testified that, during the relevant disability period, he experienced six to eight "bad" days a month in which he could not get out of bed due, in part, to pain in his right leg. (A.R. 70.) While plaintiff testified that he takes medication to ease the pain, he stated that his medication puts him to sleep,

rendering him incapable of working.[6] (A.R. 68.) In addition to plaintiff's pain testimony, plaintiff's disability report and medical records contain reports of weakness, numbness, and swelling in plaintiff's right leg as well as difficulties sitting and standing for more than 30 minutes at a time.[7] (*See, e.g.*, A.R. 147 (cannot sit for more than 30 minutes); A.R. 238 (pain, tenderness, and swelling of the right leg); A.R. 249 (continued "numbness and weakness in the right lower extremity"); A.R. 256 ("leg and foot weakness/numbness").)

The medical evidence of record confirms that plaintiff suffers from deep vein thrombosis of the right leg. A January 5, 2006 Venous Doppler study of plaintiff's right leg, for example, shows findings consistent with deep vein thrombosis, including: "filing defects . . . in the deep veins of the right leg"; "no sign of flow within the various structures [of plaintiff's vessels]"; and "noncompressible" vessels.[8] (A.R. 238.)

---

[6] Plaintiff testified that he takes Warfarin, an anticoagulant, to treat his deep vein thrombosis. (A.R. 65, 152.) He further testified that he wears compression stockings to prevent blood clots from traveling to his heart and causing a heart attack and/or stroke. (A.R. 68-69.)

[7] It is unclear from the record what role, if any, plaintiff's back condition plays in plaintiff's right leg pain and functional limitations. At the hearing, plaintiff testified to experiencing pain which would "radiate from his buttock down to . . . [his] right leg." (A.R. 64.) While plaintiff was originally told that he had sciatica, plaintiff testified that later testing showed "something else [was] wrong with [him]." (*Id.*) Plaintiff did not specify, and the Court cannot determine, what this later testing showed. Notwithstanding this testimony, based on plaintiff's other testimony as well as the medical evidence of record, substantial evidence establishes that plaintiff's impairment of vascular insufficiency of the right leg would have more than a minimal effect on plaintiff's ability to work.

[8] While the Venous Doppler study was performed one month after plaintiff's date last insured, the Ninth Circuit has stated that "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition."

In addition, in a February 28, 2008 Medical Source Statement regarding plaintiff's ability to do work-related physical activities, medical expert Dr. Mason notes that plaintiff has a history of deep vein thrombosis (A.R. 376), which is supported by medical evidence in the record (A.R. 381, 383).

Based on plaintiff's testimony, as well as medical evidence in the record, substantial evidence regarding the vascular insufficiency in plaintiff's right leg was presented to the ALJ. The Court finds that plaintiff's impairment of vascular insufficiency of the right leg would have more than a minimal effect on plaintiff's ability to perform basic work activities. Accordingly, the ALJ's failure to address plaintiff's vascular insufficiency of the right leg constitutes error.

Moreover, and contrary to defendant's contention, the ALJ's failure to address plaintiff's vascular insufficiency cannot be deemed harmless. In general, an ALJ's failure to discuss a claimant's impairment at step two may be harmless only when the ALJ's error did not prejudice a claimant at later steps in the sequential evaluation process. In Burch, for example, the Ninth Circuit assumed, without deciding, that it was legal error for the ALJ not to discuss plaintiff's obesity in his step two analysis. 400 F.3d at 682. The Ninth Circuit concluded, however, that the assumed error was harmless, because it would not have impacted the ALJ's analysis at either step four or five of the evaluation

---

Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988); see also Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1228-29 (9th Cir. 2010)(noting that "[w]hile the ALJ must consider only impairments (and limitations and restriction therefrom) that [plaintiff] had prior to the [date last insured], evidence post-dating the [date last insured] is probative of plaintiff's pre-[date last insured] disability").

9

process. Specifically, the Ninth Circuit found that, for purposes of step four, plaintiff failed to point to any evidence of functional limitations due to her obesity that would have impacted the ALJ's analysis. *Id.* at 683. Further, at step five, the Ninth Circuit found that no prejudice occurred, because the ALJ "adequately considered [plaintiff's] obesity in his RFC determination" -- *i.e.*, there were no "functional limitations as a result of [plaintiff's] obesity that the ALJ failed to consider." *Id.* at 684; *see also* Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007)(finding that any error the ALJ committed in failing to list plaintiff's bursitis at step 2 was harmless, because the ALJ "extensively discussed" plaintiff's bursitis and "considered any limitations posed by the bursitis at [s]tep 4").

In this case, unlike in Burch and Lewis, the Court cannot conclude that the ALJ's failure to consider plaintiff's vascular insufficiency of the right leg is harmless error. In pertinent part, except for a restriction in his RFC assessment that plaintiff not operate foot controls with his right leg, there is no indication that the ALJ properly considered plaintiff's vascular insufficiency of the right leg or plaintiff's alleged attendant functional limitations and pain. As discussed above, plaintiff has alleged significant functional restrictions in his right leg during the disability period at issue -- including, *inter alia*, pain and swelling in his right leg; difficulties sitting or standing for more than 30 minutes at a time; and 6-8 "bad" days a month in which he could not get out of bed due, in part, to pain in his right leg. Contrary to defendant's contention, plaintiff's alleged functional restrictions exceed those found by the ALJ and, thus, could have impacted the ALJ's RFC assessment.

Further, as discussed *infra*, the ALJ has not provided clear and convincing reasons for rejecting plaintiff's alleged functional restrictions and pain in his right leg. Accordingly, because the Court cannot conclude that plaintiff was not prejudiced at a later step in the sequential evaluation process, the Court cannot find the ALJ's error to be harmless. *See* Stout, 454 F.3d at 1055 (finding an error to be harmless when it "was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion").

## II. The ALJ Failed To Give Clear And Convincing Reasons For Finding Plaintiff's Testimony To Be Not Credible.

Once a disability claimant produces objective evidence of an underlying impairment that is reasonably likely to be the source of his subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)(*en banc*); *see also* 20 C.F.R. § 404.1529(a) (explaining how pain and other symptoms are evaluated). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins, 466 F.3d at 883. The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect

of the symptoms of which the claimant complains. *See* Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. § 404.1529(c).

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 18.) Further, the ALJ cited no evidence of malingering by plaintiff. Accordingly, the ALJ's reason for rejecting plaintiff's credibility must be "clear and convincing."

In his decision, the ALJ stated that plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the [RFC] assessment." (A.R. 18.) Specifically, the ALJ found plaintiff to be not credible because: (1) plaintiff's "medical problems in combination are managed by generally conservative and routine care which includes medications and periodic office visits"; and (2) the objective medical evidence does not corroborate plaintiff's subjective symptoms. (*Id.*)

The ALJ's first ground for finding plaintiff to be not credible is neither clear nor convincing. Contrary to the ALJ's contention, plaintiff's medical conditions do not appear to be "managed" by his medications and periodic office visits. For example, as discussed above, plaintiff testified that, during the disability period at issue, he experienced six to eight "bad" days a month, in which he could not get out of bed due to pain in his back and leg. (A.R. 70) Although plaintiff testified that he was able to ease his pain by lying down and

taking his pain medication, plaintiff also testified that his pain medication "puts him to sleep," rendering him incapable of working. (A.R. 66, 68.) Indeed, Dr. Mason, upon whose opinion the ALJ relied in formulating plaintiff's RFC (A.R. 17), testified that he would expect a person with plaintiff's medical conditions to have "fair" and "poor" days, but *not* "a lot of good days" (A.R. 31). Dr. Mason also agreed that it would be "medically reasonable" for a person with plaintiff's condition to be "suffering" from plaintiff's alleged symptoms. (A.R. 31-32.) Accordingly, given plaintiff's testimony and that of Dr. Mason, the ALJ's reason for discrediting plaintiff is neither clear nor convincing.[9]

The ALJ's second ground for finding plaintiff to be not credible is equally unavailing. To support his adverse credibility finding on the second ground, the ALJ noted that Dr. Mason's physical examination of plaintiff "failed to produce any significant objective findings."[10] (A.R. 18.) The ALJ also noted that "there was no musculoskeletal

---

[9] Even assuming *arguendo* that plaintiff's condition could be deemed to be "managed" by medications and routine office visits, there is no indication that the ALJ considered the alleged side effects of plaintiff's medications in the disability evaluation, as required. *See* Erickson v. Shalala, 9 F.3d 813, 817-18 (9th Cir. 1993)(noting that an ALJ must consider all factors, including the side effects of medications, that might have a "'significant impact on an individual's ability to work'")(citation omitted); *see also* Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2-*3, 1996 SSR LEXIS 4, at *7-*8 (noting that "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" should be considered in the disability evaluation); 20 C.F.R. § 404.1529(c)(3)(iv). This constitutes error.

[10] Contrary to the ALJ's statement, it does not appear that Dr. Mason actually physically examined plaintiff. Rather, the record indicates that Dr. Mason completed a Medical Source Statement after having reviewed "exhibits selected for inclusion in the record of this case." (A.R. 373, 385.)

13

examination more recent than January 2003" and "[a]side from an x-ray report in 2002, . . . there [were] no imaging and/or x-ray reports, which showed any significant problems." (*Id.*)  In addition, the ALJ stated that:

> there was no objective evidence of atrophy in the extremities, persistent neurological deficits (*i.e.*, reflex, motor or sensory loss), or persistent inflammatory signs (heat, redness, swelling, etc); there was no neuropathic pain, which could be carried over a long period; and there was no evidence of nerve irritations.  Also, there are no indications that this impairment would last for a continuous period of at least 12 months.  Finally no physician has opined greater limitations than [the ALJ] finds with respect to any continuous period of at least 12 months.

(*Id.*)

With respect to the ALJ's contention that, aside from the x-ray report in 2002, there are no imaging and/or x-ray reports that show any significant problems, the ALJ appears to ignore or inaccurately summarize the content of plaintiff's medical records. *See* <u>Reddick v. Chater</u>, 157 F.3d 715, 723 (9th Cir. 1998)(reversing and remanding case, because ALJ's characterization of the record was "not entirely accurate regarding the content or tone"); *see also* <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456 (9th Cir. 1984)(holding that it was error for an ALJ to ignore or misstate competent evidence in the record to justify his conclusion).  Contrary to the ALJ's contention, the record contains

imaging that appears to show that plaintiff has significant medical problems. A January 23, 2003 CT scan of plaintiff's cervical spine, for example, revealed that plaintiff has: (1) degenerative disc disease, a moderate degree of central cervical stenosis, and blunting of the right nerve root sleeve at the C4-5 location; (2) degenerative disc disease and moderately severe central cervical stenosis with impingement on the cervical cord at the C5-6 location; and (3) marked degenerative disc disease, severe cervical stenosis with cord compression, marked degenerative bony encroachment on the lateral recesses and neural foramina bilaterally, marked truncation of the right side nerve root sleeve, and an attenuated left side nerve root sleeve at the C6-7 location.[11] (A.R. 214-15.) In addition, a Venous Doppler study performed on January 5, 2006, revealed that plaintiff has a filing defect in multiple deep veins in his right leg that is consistent with deep vein thrombosis. (A.R. 238) Clearly these imaging reports are not insignificant, and thus, the ALJ's conclusion, based upon his improper summarization of plaintiff's medical records, cannot constitute a clear or convincing reason for finding plaintiff to be not credible.

Further, the ALJ's observation that plaintiff does not have any objective evidence of atrophy, persistent neurological deficits, persistent inflammatory signs, neuropathic pain, or nerve irritations is unpersuasive. Significantly, the record is devoid of any medical testimony, and the ALJ has not specifically identified any evidence, to

---

[11] In addition, it appears that the ALJ ignored plaintiff's March 25, 2002 MRI of the lumbar spine which revealed "spinal stenosis and foraminal narrowing . . . , with the greatest narrowing at [the] L-3 and L5-S1 [locations]." (A.R. 286-87.)

support his observation.[12] *See* Valenzuela v. Astrue, 247 Fed Appx. 927, 929, 2007 WL 2693679 *1 (9th Cir. Sept. 10, 2007)(finding the ALJ's credibility determination unsupported by substantial evidence, in part, because there was no medical testimony to support ALJ's determination that plaintiff lacked muscular atrophy); *see also* Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999) (noting that, when making a credibility determination, "[t]he ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints"). Thus, at present, the ALJ's observation is unavailing, because it constitutes a medical opinion that the ALJ is not qualified to make. *See, e.g.*, Ananais v. Astrue, 2010 WL 129676, at *4, 2010 U.S. Dist. LEXIS 1420, at *12 (C.D. Cal. January 7, 2010).[13]

The ALJ's last two reasons for discrediting plaintiff are also unavailing. First, the ALJ attempts to discredit plaintiff by stating that there are no indications that "this impairment" would last for a continuous period of at least 12 months. (A.R. 18.) The ALJ's reference to "this impairment" is entirely unclear, and therefore, without further specificity, this reason cannot constitute a clear or

---

[12] Indeed, the ALJ noted that plaintiff has not had any musculoskeletal examination since January 2003. (A.R. 18.) Accordingly, it is unclear upon what medical evidence, if any, the ALJ relied in determining that plaintiff does not have atrophy in his extremities.

[13] Moreover, plaintiff's medical record contains evidence of neurological deficits (*i.e.*, sensory loss), inflammatory signs, and nerve irritations. By way of example, plaintiff's CT scan of the lumbar spine shows blunting of the C4-5 nerve root, impingement of the cervical cord at the C5-6 location, cord compression at the C6-7 location, and a truncated right side and attenuated left side nerve root sleeve at the C6-7 location. (A.R. 214-15; *see also* A.R. 250 (polyneuropathy bilaterally).) Additionally, as noted *supra*, plaintiff's medical record and testimony indicate that plaintiff has weakness, numbness, and swelling in his right leg.

16

convincing reason for discrediting plaintiff. Second, to the extent the ALJ attempts to discredit plaintiff because no physician has opined greater limitations than found by the ALJ, the ALJ's reasoning is unpersuasive. Significantly, it appear that Dr. Mason, upon whom the ALJ relied in assessing plaintiff's RFC, is the only physician to assess plaintiff's limitations specifically. However, in a letter dated September 23, 2009, plaintiff's treating physician, Arun Budhraja, M.D. noted, *inter alia*, that plaintiff's pain continues to worsen and that, if plaintiff sits or stands for more than 30 minutes, he experiences "extreme pain whereupon he needs to take pain medication and lie flat for two hours to reduce the pressure on his neck and back." (A.R. 397.) These limitations, as noted by plaintiff's treating physician, clearly exceed those identified by the ALJ in plaintiff's RFC.

Moreover, and significantly, the ALJ's above reasoning is unconvincing, because the failure of the medical record to corroborate fully plaintiff's subjective symptom testimony is not, by itself, a legally sufficient basis for rejecting such testimony. Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001); Bunnell, 947 F.2d at 347 (noting that "[i]f an adjudicator could reject a claim of disability simply because [plaintiff] fails to produce evidence supporting the severity of the pain there would be no reason for an adjudicator to consider anything other than medical findings"). Accordingly, the ALJ's finding that the objective evidence does not support the extent of plaintiff's physical complaints cannot, by itself, constitute a clear and convincing reason for discrediting plaintiff's testimony. *See* Varney v. Secretary, 846 F.2d 581, 584 (9th Cir. 1988); Cotten v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); *see also* Burch, 400 F.3d at 681.

Accordingly, for the aforementioned reasons, the ALJ failed to give clear and convincing reasons, as required, for discrediting plaintiff.

**III. Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1179-81.

Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See, e.g.,* Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989) (remand appropriate to remedy defects in the record).

On remand, the ALJ must correct the above-mentioned deficiencies and errors. After so doing, the ALJ may need to reassess plaintiff's RFC, in which case, additional testimony from a vocational expert likely

18

will be needed to determine what work, if any, plaintiff can perform.

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: June 6, 2011

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE